UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>-against-<br><br>Chad Marks,<br><br>Defendant. | Case No. 6:03-cr-06033-DGL |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)**

DEBEVOISE & PLIMPTON LLP

Sarah Wolf
John Gleeson*
Marisa Taney*
swolf@debevoise.com
jgleeson@debevoise.com
mrtaney@debevoise.com
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
*Attorneys for Chad Marks*

**Application for admission pending*

The defendant, Chad Marks, respectfully moves this Court for an order reducing his sentence to time served based on the "extraordinary and compelling reasons" discussed below, pursuant to the newly-amended 18 U.S.C. § 3582(c)(1)(A)(i). We also request oral argument on this motion.

## INTRODUCTION

Chad Marks is more than 16 years into to a 40-year prison term imposed by this Court. The bulk of this harsh sentence was not based on Marks's role in the offense or the severity of the crime. Instead, it was a result of the fact that Marks faced an additional 18 U.S.C. § 924(c) charge carrying a mandatory consecutive 25-year sentence because he exercised his constitutional right to trial by jury.[1] After Marks was convicted on all counts at trial, he received ten years for the underlying drug offenses, five consecutive years for the first § 924(c) count, and then 25 years on the second § 924(c) count. Marks was only 24 years old when he committed his crimes; today he is 40.

This Court has made clear on multiple occasions that it does not agree with the mandatory sentence it was forced to impose on Marks, and has written multiple times to encourage a sentence reduction through non-judicial means. In October 2018, Your Honor submitted a letter in support of Marks's clemency petition, stating:

> I never would have imposed a 40-year term for this type of offender. All of Marks's co-defendants received sentences well below 12 years and have all

---

[1] The government has admitted that the second § 924(c) count was prosecuted only because Marks refused to plead guilty. *See United States v. Brown*, 623 F. 3d 104, 107-108 (2d Cir. 2010) (quoting affidavit of Assistant U.S. Attorney Everardo Rodriguez).

> completed their sentences. The trial established that Marks did use firearms – mostly as a source of protection against rival drug operatives.
>
> As a long-time federal judge and former Assistant United States Attorney, I know that there are, and should be, consequences for criminal conduct, but I also know that there can be redemption and success stories involving inmates who have changed. Chad Marks has changed dramatically. His record of accomplishment while in prison is extraordinary . . . I believe this man now has the capacity to do good in the community. …
>
> I urge clemency at least to the extent that his punishment is reduced to a 15-year term with a 5-year term supervised release.

Dkt. 496-1, Ex. M. The Court further noted that in "over 30 years on the federal bench, I have never before written to urge clemency, but I believe this man deserves careful consideration." *Id.* Marks's petition for clemency was denied in January 2017.

Earlier this year, following the passage of the First Step Act by Congress in December 2018, the Court again expressed its support for a reduction of Marks's sentence. In a March 2019 order, it noted that "[i]f convicted now, Marks would not be penalized for going to trial with the possibility of a 30-year consecutive sentence" and again observed that in "more than 30 years as a district court judge, I have never known a prisoner to do more to make changes in his life while incarcerated." Dkt. 493 at 2. The Court implored the United States Attorney to "carefully consider exercising his discretion to agree to an order vacating one of Marks's two Section 924(c) convictions." *Id.* When Marks reached out through counsel to the United States Attorney to discuss this possibility, however, he received no response.[2]

---

[2] In a May 20, 2019 letter, we asked the United States Attorney to agree to vacate Marks's second § 924(c) conviction and allow this Court to resentence him, citing the *Holloway* case in the Eastern District of New York, *Holloway v. United States*, 68 F. Supp. 3d 310 (E.D.N.Y. 2013), and similar cases in other districts. He has not responded.

On June 18, 2019, Marks submitted a written request to Warden Francisco J. Quintana asking that he move this Court for a reduction of Marks's sentence under 18 U.S.C. § 3582(c)(1)(A)(i). On July 9, 2019, the warden informed Marks that he was declining to file such a motion. Ex. A (Denial Letter).

Thanks to the amendments to § 3582(c)(1)(A) that were enacted as part the First Step Act, the Court is now empowered to bring a measure of justice to Marks's sentence, and we ask the Court to do just that for the reasons set out below. *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018).

## FACTUAL BACKGROUND

Marks was charged with multiple counts of nonviolent, small-time narcotics trafficking and two § 924(c) counts. He was offered a plea bargain that, if accepted, would have spared him the prospect of facing both § 924(c) counts. Marks did not plead guilty, and he was convicted after trial of six narcotics trafficking charges and two § 924(c) counts. He was sentenced to a 40-year prison term—concurrent ten-year sentences on the narcotics counts, to be followed by the mandatory, consecutive five-year term on the first § 924(c) count, and the then-applicable mandatory, consecutive 25-year term on the second § 924(c) count. Even though Marks has served 16-and-a-half years in prison, his projected release date is in the year *2038*.

Marks's sentence stands in stark contrast to those of his co-defendants, Nathan Brown, Tommy Hardy, and Richard Ross Jr. Unlike Marks, they pled guilty, and they were sentenced to prison terms of 181 months, 151 months, and 78 months, respectively. Marks's sentence is longer than all of their sentences combined. The co-defendants were all released from prison years ago.

As noted above, on June 18, 2019, Marks submitted an amended Compassionate Release form to the warden of the institution where he is incarcerated, requesting that the warden move this Court for a reduction of his sentence. As of the date of filing this petition—38 days after Marks made his written request to the warden—the Bureau of Prisons (the "BOP") has not filed a motion on Marks's behalf with the Court.

## DISCUSSION

The Court now has the authority to reduce Marks's sentence based on the extraordinary and compelling circumstances presented here. First, it has the jurisdiction to hear this motion because more than 30 days have passed since the warden received Marks's request, and the Director of the BOP has not filed a motion with this Court. Second, the changes to 18 U.S.C. § 3582(C)(1)(A)(i) made by the First Step Act have finally vested *the Court* with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction. Third, as this Court has already observed, the circumstances presented here cry out for a sentence reduction.

### A. The Court Has Jurisdiction to Grant Release for "Extraordinary and Compelling Reasons"

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the courts had the final decision-making authority over whether a sentence would be reduced, the statute imposed a gatekeeper—that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce

a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reduction. 18 U.S.C. § 3582(c)(1)(A)(i); *see also* PL 98–473 (HJRes 648), PL 98–473, 98 Stat 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). *See* P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in *two* circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See also United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *6 (S.D. Tex. June 17, 2019) ("[u]nder the newly amended § 3582(c)(1)(A) [defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); *United States v. Cantu-Rivera*, No. CR H-89-204, 2019 WL 2578272, at *2 (S.D. Tex. June 24, 2019) (defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has the authority to address the motion of the defendant."). As noted above, Marks submitted his request to the warden on June 18, 2019. As of the date of this filing, more than 30 days after Marks submitted his request, the BOP has not filed a motion with this Court on Marks's behalf. Accordingly, Marks is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

### B. The Relief Requested Here is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statement

#### 1. *Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances*

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist.

Congress's initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances. These would include cases of severe illness, cases in which *other extraordinary and compelling circumstances* justify a reduction of an unusually long sentence, and some cases in which the sentencing guidelines for the offense of which the defendant was convicted have been later amended to provide a shorter term of imprisonment.

*Id*. at 55–56 (emphasis added). Put differently, rather than having the Parole Commission review every federal sentence, Congress decided to let sentencing courts decide, in a far narrower band of cases presenting extraordinary and compelling circumstances, if "there is a justification for reducing a term of imprisonment." *Id*. at 56.

The situations listed in § 3582(c) were thus intended to serve as "safety valves for modification of sentences," enabling sentence reductions when justified by factors that

previously could have been addressed through the (now abolished) parole system. *Id.* at 121. This approach was intended to keep "the sentencing power in the judiciary where it belongs," rather than with a federal parole board, and permitted "later review of sentences in particularly *compelling situations*." *Id*. (emphasis added). Notably, Congress imposed no limitations on courts' authority to make such determinations, declining to define what constitutes "extraordinary and compelling reasons" or to otherwise constrain judges' discretion. The mandate was simple: If extraordinary and compelling circumstances were present, they would "justify a reduction of an unusually long sentence." S. Rep No. 98-225, at 55–56 (1983).

Unfortunately, the establishment of the BOP as a gatekeeper virtually eliminated the safety valve. The BOP, which is of course part of the Department of Justice, hardly ever opened the gate.[3] As a result, Congress, through the First Step Act, allowed direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

2. *The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances*

When enacting § 3582(c), Congress delegated the responsibility for expounding upon what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria

---

[3] *See, e.g.*, The Answer is No: Too Little Compassionate Release in US Federal Prisons, Human Rights Watch, 2 (Nov. 2012), https://www.hrw.org/sites/default/files/reports/us1112ForUploadSm.pdf (noting that between 1992 and 2012, the average annual number of prisoners who received compassionate release following a motion by the BOP was less than two dozen).

to be applied and a list of specific examples."); *see also* 28 U.S.C. § 992(a)(2) (the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section[ ] . . . 3582(c) of title 18"). The resulting policy statement by the Commission sets forth the following factual considerations: (i) the medical condition of the defendant (including terminal illness and other serious conditions and impairments); (ii) the age of the defendant (for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of imprisonment); (iii) the family circumstances of the defendant (where a child's caregiver or spouse dies or becomes incapacitated without an alternative caregiver); and (iv) "other reasons" as determined by the BOP. U.S.S.G. § 1B1.13, Application Note 1(A). The fourth category specifically includes "an extraordinary and compelling reason other than, or in combination with," the first three. *Id.* Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." *Id.*

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing complicated family circumstances. And though the policy statement—which has not been amended since the passage of the First Step Act—vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons

warrant a reduction of sentence. Accordingly, that aspect of the commentary is not binding on the courts for two reasons: (1) the Guidelines are advisory only, *see United States v. Booker*, 543 U.S. 220 (2005); and (2) it is inconsistent with the text and the undisputed purpose of the First Step Act. *See United States v. Da Cai Chen*, 127 F.3d 286, 291 (2d Cir. 1997) (commentary that relates to a statute, or to a guideline that mirrors as statute (as here), is not entitled to deference); *see also United States v. Pierninanzi*, 23 F.3d 670, 683 (2d Cir. 1994). Indeed, at least three district courts, since the passage of the First Step Act, have observed that §1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," *U.S. v. McGraw*, No. 2:02-cr-00018 (LJM)(CMM), 2019 WL 2059488, at *2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." *Cantu-Rivera*, 2019 WL 2578272 at *3 n.1. *See also Cantu*, 2019 WL 2498923 at *9 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3583(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3852.").

The Court's authority to reduce Marks's sentence is not only consistent with the statute, but also with the language in the policy statement making clear that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered *courts* to

make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

Thus, just last month, a district court in Texas held as follows:

> [T]he correct interpretation of § 3582(c)(1)(A)—based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements 'at any time' [. . .]—is that when a defendant brings a motion for sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G § 1B1.13 cmt. N.1(A)-(C) warrant granting relief.

*Cantu*, 2019 WL 2498923 at *11. This Court therefore may make an independent assessment of Mark's case in considering whether extraordinary and compelling reasons warrant the reduction of his sentence.[4]

3. *Extraordinary and Compelling Circumstances Warrant a Reduction in Marks's Sentence*

The practice of "stacking" enhanced § 924(c) charges in a first offense has received wide condemnation for many years. Finally, last December, this practice was eliminated. The

---

[4] *See also Cantu*, 2019 WL 2498923 at *4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582.") (emphasis in original); *Cantu-Rivera*, 2019 WL 2578272 at *2 n.1 (finding authority to determine that defendant was entitled to relief under the catch-all provision in the commentary to § 1B1.13 because the "current policy statement predates the enactment of the First Step Act and is not likely to be amended within the foreseeable future due to lack of a sufficient number of serving members of the Sentencing Commission."); *United States v. Beck*, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

government can no longer invoke the dramatically enhanced mandatory consecutive sentences prescribed for "second or successive" § 924(c) convictions in the same case in which the first such conviction is obtained. From now on, those staggering sentences will be permissible only after a truly "subsequent" conviction. Notably, the fact that this amendment was titled a "Clarification of Section 924(c)" makes clear that 924(c) was never intended by Congress to result in sentences like the one at issue here. That fact alone constitutes an extraordinary and compelling basis for a reduction of sentence.

In addition, a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to consider other factors that may warrant relief, including the defendant's rehabilitation, the sentencing disparities with his co-defendants, and other factors bearing on the person Marks is today. As set forth below, these factors further establish the sort of "extraordinary and compelling reasons" that warrant a reduction of his forty-year sentence.

**C. The Criteria for Reassessing the Length of Marks's Sentence Weigh Strongly in Favor of a Sentence Reduction.**

In determining whether Marks's sentence should be reduced, the Court must decide, *inter ali*a, whether Marks presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all of these factors weigh strongly in favor of relief in Marks's case.

1. *Marks Is Not a Danger*

Marks is not a danger to the community. There was no use or threat of violence by Marks in connection with his offenses, which involved low-level sales of narcotics by Marks and his co-defendants to a confidential informant. Marks's lengthy sentence was not based in any

way on the dangerousness of his criminal conduct or the need to incapacitate him, but was instead the result of a sentence enhancement the government invoked solely because Marks elected to go to trial. Although he had a criminal history, his last felony conviction was almost a decade before this conviction in this case.

The evolution of Marks's character in the more than 16 years he has been incarcerated further precludes a finding that he poses a danger. As this Court has recognized, "Marks' acts and accomplishments while incarcerated for the last decade are truly extraordinary." Dkt. 493 at 3. He received a college degree in 2018, earning an Associate's Degree in ministry from Vision International University. Dkt. 491, Ex. B. He has not only completed dozens of rehabilitation programs but has become an instructor or facilitator for several of those programs.[5]

The fact that Marks will be an asset to the community, rather than a danger, is further demonstrated by an offer of employment that has already been extended to him. The president of Safeguard Atone Validate Educate (S.A.V.E.) has expressed his commitment to hiring Marks upon his release. Dkt. 491, Ex. G. In addition, Youst Commercial Coatings has invited Marks to interview for a position. *Id.* Marks's prison supervisors are "satisfied with his job performance as it is above that of his peers . . . Marks responds well to supervision and instruction, completes tasks without being asked, takes initiative in motivating inmates to obtain their GED, and has an

---

[5] *See, e.g.*, Dkt. 491, Ex. B (noting Mark served as an instructor for the "Leaders Breed Leaders" program); Dkt. 491, Ex. C (certificate of completion for Alternatives to Violence Project facilitator workshop). Marks established a program called "Stimulate Train Educate Mentor" (S.T.E.M.) which emphasizes that "character is everything." Dkt. 491, Ex. F. He has also served as a GED teacher, assisting other inmates to earn the credential, and has helped create the curriculum for the Rehabilitate Integrate Stimulate Educate (R.I.S.E.) program. Dkt. 491, Ex. D.

outstanding overall job proficiency." Dkt. 496, Ex. K. One supervisor noted that he "would recommend Chad Marks for employment in the workforce." *Id.*

In short, Marks is clearly not a danger to the community.

2. *The Relevant § 3553(a) Factors Weigh Strongly in Favor of Relief*

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether Marks's request for a sentence reduction should be granted. As discussed above, Marks's involvement in a nonviolent drug conspiracy, coupled with a criminal history devoid of violent offenses and his good behavior during his incarceration (with limited disciplinary history and no prohibited acts for almost six years) weighs in favor of a reduced sentence. While his crimes were serious, he has accepted responsibility for them and he has already endured serious punishment for them, as evidenced by the disparity between his sentence and those of his co-defendants.

The 16-plus years Marks has already served in prison have been transformative for him. He has dedicated himself to the rehabilitation of himself and others, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." There is no doubt that the time Marks has already served is more than sufficient to achieve the objectives of his sentence and incarceration, including to deter similar misconduct.

Finally, this Court should consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). This factor, too, weighs strongly in favor of a sentence reduction for

Marks. As noted above, there are glaring disparities between Marks's sentence and those of his co-conspirators, all of whom were released from prison years ago.

**D. Marks Is Deserving of Mercy**

With the passage of the First Step Act, Congress emphasized the imperative of reducing unnecessary incarceration and avoiding unduly punitive sentences that do not serve the ends of justice. *United States v. Simons*, No. 07-CR-00874, 2019 WL 1760840, at *8 (E.D.N.Y. Apr. 22, 2019). As outlined above, Marks is a model of rehabilitation. He has spent his time in prison improving himself, has had no major disciplinary infractions, and has continued to work towards justice for himself and for others incarcerated with him. *See* Dkt. 496, Ex. H, I, J. He has demonstrated an unwavering commitment to becoming a productive member of society if released. He earned a degree in ministry while incarcerated, Dkt. 491, Ex. B, which he hopes to put to use attending and volunteering at the Victory Baptist Church in Henrietta, New York. If released, Marks will live in Rochester with his uncle, James Bassford. Marks has a family and a community ready to support him and a life to build for himself and them.

The Court has admirably urged the government to agree to an order vacating one of Marks's two § 924(c) convictions. Dkt. 493 at 4. After noting that the First Step Act "does not appear" to "benefit [Marks] directly because the changes to Section 924(c) do not appear to be retroactive[,]" the Court observed that "for the system to say to Mr. Marks 'too bad, the changes don't apply to you and you must serve the lengthy remainder of your 40-year term, and perhaps die in jail'" is not just. *Id*. at 2. As the Court stated, "[e]xtraordinary cases require extraordinary care and sometimes extraordinary relief," and it urged the government to "carefully consider exercising [its] discretion to agree to an order vacating one of Mark's two Section 924(c)

convictions." *Id*. at 3-4. It is of course not too late for the government to show its compassion in that way. But for those same reasons, we respectfully urge the Court to use the power conferred by the First Step Act to reduce Marks's sentence.

## CONCLUSION

Congress never intended to permit, let alone to mandate, the excessive punishment Marks received in this case. It has now given the Court the power to grant Marks relief from that sentence. Marks respectfully requests that the Court take this opportunity to grant a reduction in his sentence based on extraordinary and compelling reasons, and reduce his sentence to time served.

DATED: New York, New York
July 26, 2019

DEBEVOISE & PLIMPTON LLP

By: /s/ Sarah Wolf
Sarah Wolf
John Gleeson*
Marisa Taney*
swolf@debevoise.com
jgleeson@debevoise.com
mrtaney@debevoise.com
919 Third Avenue
New York, New York 10022
Phone: (212) 909-6000
*Attorneys for Chad Marks*

**Application for admission pending*